L. C. PARKER REALTORS, INC., a Delaware corporation, Plaintiff, v. DUTCH VILLAGE, INC., a Delaware corporation, Defendant.

*(March* 13, 1962.)

CHRISTIE, J., sitting.

*H. Albert Young, Bruce M. Stargatt* and *Richard H. May* (of Morford, Young and Conaway) for the plaintiff.

*Clement C. Wood* (of Allmond and Wood), and *L. Coleman Dorsey* for the defendant.

Superior Court for New Castle County, No. 1575, C. A., 1960.

CHRISTIE, J.:

L. C. Parker Realtors, Inc., (Parker), a Delaware corporation, is a real estate broker. Dutch Village, Inc., (Dutch Village), a Delaware corporation, is the owner of a tract of land at Hare's Corner on which is located a motel which it operates as the Dutch Village, a Socony service station and a Howard Johnson restaurant.

Parker alleges that in early summer of 1960 it was authorized by Dutch Village to offer its real estate for sale at $450,000 cash, net, to Dutch Village; that with the cooperation of Dutch Village it actively sought a purchaser at the terms laid down by Dutch Village; that it found a purchaser

who made an offer of $500,000 for the premises and was ready, able and willing to buy at that price; that Dutch Village then refused to sell and that Dutch Village owes Parker a commission of six percent or $30,000 for its efforts.

Dutch Village denies that its property was ever for sale and denies that it had any agreement with Parker. Dutch Village denies that Parker produced a bona fide cash offer from a ready, able and willing buyer. Dutch Village also challenges the authority of its own employee to have bound it in any such transaction and the authority of Parker's employee to act.

There are about 40 stockholders of Dutch Village. It has been a successful corporation and its property has increased in value. As the corporation's business venture prospered a number of people showed interest in the purchase of its real estate. Although the Directors did not appear to be eager to sell, they were interested in obtaining offers and they were seriously considering a sale.

On May 3, 1955, the Directors resolved that the proper officers are "authorized and directed to engage the American Appraisal Company to appraise the corporation for sale purposes and * * * to negotiate with prospective purchasers for the sale of the stock and/or the assets of the corporation".

This was the only authorization approved by the Board of Directors in regard to the sale of the property. It was an authority and direction to negotiate. No sale was authorized under such resolution.

An appraisal was obtained which was not deemed to be satisfactory by Mr. Pierre S. du Pont, President and largest stockholder of Dutch Village. Interest in a sale seemed to lag but it did not cease to exist.

In December of 1955, Mr. du Pont informed one of the other stockholders that he felt the property is worth $400,000 and "I would not entertain any offer much below that".

The record reveals no particular activity for the next four years.

The property was never formally listed, but at least two persons in the real estate business got the impression that the Dutch Village was for sale.

On April 14, 1960, Dutch Village turned down an offer for $375,000. At that time Mr. Keith M. Lord, Treasurer of Dutch Village, stated that the "Directors and Stockholders had advised him that their asking price remains at $450,000 with no financing available from the corporation".

In July 1960, Edward J. Schabach, a trainee-salesman employed by Parker, was told by a local businessman who was active in the real estate field that Dutch Village was for sale. The businessman also supplied Mr. Schabach with some data. Mr. Schabach then called the resident manager of the Dutch Village to discuss the matter and was referred to Mr. Lord.

In response to a phone call Mr. Lord came to Mr. Schabach's office and supplied Mr. Schabach with additional data about the Dutch Village and its operation. It is apparent that Mr. Schabach was aggressively seeking real estate brokerage business and that Mr. Lord was entirely willing to cooperate with Mr. Schabach's efforts to find a purchaser. It is also apparent that the figure of $450,000, cash, net, to Dutch Village was mentioned, and that Parker's trainee-salesman expected compensation if a sale was consummated.

Mr. Lord testified that the $450,000 figure was mentioned as the price below which the Directors would not be interested in receiving offers. Mr. Lord also testified that he made it clear at all times that any offer to purchase was subject to the approval of the Dutch Village Board of Directors. Mr. Schabach, on the other hand, testified that the $450,000, cash, net, to Dutch Village was clearly mentioned as the "asking price" and that approval of the sale, while mentioned, was

pictured as a mere formality which was bound to follow the presentation of an offer of the asking price.

Subsequently the Parker organization put a great deal of time and effort into the attempt to find purchasers for Dutch Village. Several persons were taken through the premises with the cooperation of the management, and on request Mr. Lord supplied Parker further details about the property and the business.

Ultimately, a number of offers were received by Parker, at least one of which appears to meet all of the requirements said to have been laid down by Mr. Lord.

Some of these offers were mailed to Mr. Lord who replied as follows:

"I have your letters of July 26 and 28, 1960, submitting offers for the purchase of the Dutch Village Motel.

"As I have told you all along, any decision as to these offers, commissions, or persons with whom the Dutch Village Corporation will deal, will have to await the pleasure of the Board of Directors and Stockholders of the Company.

"I will pass your letters on to the Board of Directors at their next meeting."

Subsequently, additional offers were supplied to Mr. Lord. Still later a brochure containing a summary of all the offers was presented to Mr. du Pont. Although Mr. du Pont appeared to be very much interested in the offers in early September, the Board of Directors rejected them all on September 22, 1960.

Important among the reasons for the rejection of the offers were complications arising from an investment Dutch Village had in Florida property and tax complications.

Finally, Parker demanded a six percent commission on one of the $500,000 offers and this law suit followed.

There are a number of important details which were not covered in the offers Parker submitted. Among these are: settlement date, a specific guarantee of financing from other sources so as to guarantee cash to Dutch Village, and waiver of the two tenants' contractual right of first refusal in case of sale. Dutch Village claims that these are fatal defects in the offers.

There is also a serious question as to whether Mr. Lord's actions could bind Dutch Village in view of Mr. Lord's lack of actual authority to do so. In this connection Parker claims Mr. Lord had "apparent" or "implied" authority. Defendant also challenges Mr. Schabach's authority to act for Parker.

Under the view which I take of the facts it is unnecessary to resolve any of these issues.

For the purpose of deciding what I deem to be the determining issue in this case I assume, without thereby deciding, that Dutch Village is liable under all the circumstances if Mr. Lord implied to Mr. Schabach by word or deed that the real estate of Dutch Village was definitely up for sale for $450,000, cash, net, to Dutch Village, and then cooperated with Parker's efforts to obtain offers.

There are important circumstances which tend to support Parker's contentions. The letter from Mr. Lord dated April 14, 1960, purports to speak for the Directors and Stockholders and refers to $450,000 as the "asking price". Although there is no evidence that the Parker people knew about this letter, its existence tends to support Parker's contentions as to what Mr. Lord said to Mr. Schabach a few weeks later.

After a careful consideration of all the facts and circumstances, however, I conclude that Mr. Lord's words and deeds did not go so far as to indicate that Dutch Village was for sale at a given price. Dutch Village was obviously interested in getting offers for its property. Its officer and employee actively

assisted Parker in its attempts to find a purchaser. It knew that Parker was putting much time and effort into the project and that Parker would expect a six percent commission if it sold to someone Parker located. But Mr. Lord never promised that Dutch Village would in fact sell for the price mentioned.

I reach this conclusion because I think Mr. Lord's recollection of the facts is more accurate than Mr. Schabach's.

My conclusion also finds support in some of the surrounding circumstances among which the following are regarded as significant:

1. Parker's trainee-salesman sought out Dutch Village and volunteered his services. It is likely that the Dutch Village management would have sought out a broker and made an appropriate contract if it had definitely decided to sell a property worth $500,000.

2. There was no up-to-date appraisal.

3. Mr. Lord had no actual authority to offer the property.

4. Mr. Lord was not with Dutch Village in 1955 and he did not even know of the May 3, 1955, resolution although he did know the Directors were interested in receiving offers.

5. On August 1, 1960, within a few days after Parker's first contact with Dutch Village, Mr. Lord told Mr. Schabach that any decision will have to await the pleasure of the Directors and Stockholders. This is not the language of one who has made an offer to sell. Although the Parker representatives were not pleased with this communication, they continued their efforts to find a purchaser in spite of this letter.

6. Even Mr. Schabach admitted that any offer he submitted was subject to Board approval but he claimed that such approval was practically guaranteed. Such a listing, if it existed, is obviously conditional, and there is insufficient evidence of a guarantee.

7. The almost simultaneous submission of so many offers is more characteristic of a broker trying to persuade an owner to sell than it is of an owner who has made up its mind to sell and has placed itself in a position where it must sell if its price is met.

I have concluded that plaintiff has failed to prove by a preponderance of the evidence an agreement between Dutch Village and Parker by which Dutch Village was obligated to pay a real estate commission to Parker upon the presentation of a bona fide offer for the purchase of the Dutch Village real estate for $450,000, cash, net, to Dutch Village.

Since plaintiff has failed to prove the basic contract upon which it sued, its entire case falls. It is unnecessary to consider the many other defenses raised by the defendant.

Judgment will be entered for defendant.